[Civ. No. 3386.    Second Appellate District, Division Two.—October 7, 1921.]

## IGNATIUS ROTTMAN, Appellant, v. FRANK D. HEVENER, Respondent.

[1] Promissory Note—Time of Payment—Oral Agreement.—In the absence of fraud or mistake, the time of payment as fixed by the written terms of a promissory note cannot be varied by any contemporaneous oral agreement.

[2] Id.—Oral Stipulations—Merger in Written Agreement.—The rule that a writing which purports to be the complete contract of the parties is deemed in law to be the full repository of the agreement or contract, that the whole contract is expressed by it, and that evidence of oral stipulations is not admissible to incorporate other elements in it or to alter or enlarge its terms, is applicable to negotiable as well as to non-negotiable instruments.

[3] Id. — Failure to Object to Oral Evidence — Effect of. — The failure to object to the admission of evidence of an oral agreement whereby the parties to a promissory note stipulated that it should not become payable until such time as the payee should see fit to demand payment does not alter the legal rights of the parties, as expressed in the note, but the incompetency of such evidence to vary the writing may be considered as a matter of law.

[4] Id. — Time of Payment — Extension by Oral Agreement. — The time of payment as fixed by the written contract of the parties may not be suspended or extended by a subsequent unexecuted oral agreement.

[5] Id.—Prior Oral Agreement—Estoppel.—An oral agreement made prior to the execution of a promissory note, whereby it was agreed that the note should not become payable until such time as the holder should see fit to demand payment, will not estop the payee from claiming that the note is payable in accordance with the maker's express written promise to pay "one day after date, without grace."

[6] Id.—Estoppel—Representations—Existing Facts—Future Contracts.—It is the general rule that, to work an estoppel, a statement or representation made during the negotiations that terminate in a written contract must relate to an existing fact and not to a mere promise of future performance; and the only exception to this rule is where the representation relates to the intended abandonment of an existing right.    The doctrine of estoppel, there-

2.  General rule that parol evidence not admissible to vary, add to, or alter a written instrument, note, 17 L. R. A. 270.

fore, has no place or application when the representation relates to rights depending upon contracts yet to be made to which the person complaining is yet to be a party.

[7] ID.—SUBSEQUENT ORAL AGREEMENT—ESTOPPEL.—Estoppel to claim payment of a promissory note in accordance with its express terms cannot be predicated on an alleged oral agreement, made by the agent of the payee subsequent to the execution of the note, to the effect that the instrument would not become payable until payment should be demanded.

[8] ID. — BREACH OF PROMISE — DISAPPOINTMENT OF EXPECTATIONS — ESTOPPEL.—The doctrine of estoppel will not arise simply from a breach of promise as to future conduct or from a mere disappointment of expectations.

[9] ID. — ORAL AGREEMENT AS TO TIME OF PAYMENT — EXCUSE FOR DELAY—CODE PROVISION CONSTRUED.—Where a promissory note is made payable "one day after date, without grace," the maker cannot successfully claim that, by reason of the provisions of subdivision 3 of section 1511 of the Civil Code, delay on his part in the performance of the obligation was excused by oral statements made by the payee's agent, at the time of and subsequent to the execution of the note, to the effect that the instrument would not become payable until payment should be demanded.

[10] ID.—TIME AND PLACE OF PAYMENT—WHEN DEMAND AND PRESENTMENT UNNECESSARY.—Where a note is payable at a particular time and place neither demand nor presentment at the place named is necessary in order to entitle the holder to maintain an action against the maker to recover the principal.

[11] ID.—ABILITY AND WILLINGNESS TO PAY—DEFENSE—PLEADING AND PROOF.—The ability and willingness of the maker of a note to pay it at maturity at the place named therein is a matter of defense that must be pleaded and proved by him, if he would establish the equivalent of a tender and thus prevent the holder from recovering further interest and costs of suit.

[12] ID.—EXTINGUISHMENT OF OBLIGATION—SUFFICIENCY OF TENDER.— To effect the extinguishment of an obligation under section 1500 of the Civil Code, there must be a full compliance therewith; and a failure to deposit the money in the name of the creditor is fatal to any claim of extinguishment.

[13] ID.—TENDER OF INSUFFICIENT AMOUNT—DEBT NOT EXTINGUISHED. Where a promissory note provides for the payment of attorney's fees "if suit should be commenced," the deposit with a bank, after the commencement of action, of an amount which does not include the attorney's fees not only does not extinguish the debt, but it cannot preclude the holder of the note from recovering his costs and attorney's fees.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge. Reversed.

The facts are stated in the opinion of the court.

M. C. Atchison for Appellant.

Alfred Blaisdell and Louis Lamy for Respondent.

FINLAYSON, P. J.—This is an action upon a promissory note. From a judgment that he take nothing by the action and that defendant recover costs, plaintiff appeals.

On May 31, 1919, at Calexico, for value received, defendant signed and delivered to plaintiff his promissory note, whereby he promised to pay to plaintiff, or order, "one day after date, without grace, . . . at International Bank of Calexico, California," the sum of $2,522.57, with interest at the rate of ten per cent annum until paid, together with attorney's fees equal to ten per cent on the amount unpaid plus $20 if suit should be commenced or other proceedings taken to enforce payment. The note expressly provides that "demand, diligence, protest and notice," are waived. On December 10, 1919, no part of the principal or interest having been paid, plaintiff commenced this action to recover the principal of the note, interest to the date of the commencement of the action, and attorney's fees as provided for by the instrument.

The answer attempts to set forth facts showing, in substance, that prior and likewise subsequent to the execution of the note plaintiff, through his agent, orally represented to defendant that the instrument should not become payable until such time as payment should be demanded—and this notwithstanding that, by the express terms of his written promise, defendant agreed to make payment "one day after date, without grace," and notwithstanding the further fact that, by the specific terms of his written contract, he expressly waived "demand." We speak advisedly when we say the answer "attempts" to allege these facts, for that pleading is such a jumble of inarticulated matters that we are somewhat uncertain as to what were the precise ideas in the mind of the pleader.

It seems that when the note was executed, May 31, 1919, it was the intention of the parties that defendant should deposit with the International Bank of Calexico, as collateral security, fifty shares of the capital stock of a certain Mexi-

can corporation. The corporation never issued the stock, and hence the contemplated security never became available. Defendant, testifying as a witness on his own behalf, was asked concerning the alleged understanding at the time of the execution of the note as to the date when it should be paid. His answer was that it was not the intention that the note should become due one day after date, June 1, 1919, which came on a Sunday, but that it was stated to him by plaintiff's agent, and agreed to, that the note would run until such time as plaintiff should demand payment—that it was not to be paid until plaintiff should ask for its payment; also that in these oral conversations the parties did not fix any definite time for payment. He also testified that it was agreed that the stock of the Mexican corporation, when issued, would be delivered to plaintiff as collateral security for the note. He further testified that a similar conversation was had between himself and plaintiff's agent subsequent to the delivery of the note.

No demand for the payment of the note was made prior to the commencement of the action on December 10, 1919. Two days thereafter defendant's property was attached, and then, so he testified, he learned for the first time that plaintiff was seeking payment of the note. Thereupon, namely, on December 12, 1919, defendant deposited with the International Bank of Calexico the sum of $2,654.17. This amount equaled the principal of the note and accrued interest, but did not include the attorney's fees provided for in the event that suit should be commenced to enforce payment. Immediately after depositing said sum with the bank defendant caused a registered letter, signed by the bank's vice-president, to be mailed at Calexico, addressed to plaintiff at his Los Angeles residence, advising the latter that the money had been so deposited. At the same time defendant caused a similar letter, addressed to plaintiff at Calexico, to be deposited in the United States mail. There is no evidence that the sum deposited with the bank was deposited in plaintiff's name, as required by section 1500 of the Civil Code when it is sought to extinguish an obligation for the payment of money as there provided. On this particular feature of the case defendant's testimony is as follows: "Q. What, if anything, did you do toward the satisfaction of the obligation after you became aware that

they were seeking to recover the money from the note? A. I deposited the full amount of principal and interest due at that time two hours after the attachment had been made.'' Upon substantially this state of facts the trial court found that all the sums due to plaintiff by defendant were paid on December 12, 1919, at the International Bank of Calexico, and gave judgment for defendant accordingly.

We are at a loss to understand upon what theory judgment was awarded the defendant. The oral agreement which it is claimed was entered into at the time of or prior to the execution of the note, to the effect that that instrument should not become payable until such time as plaintiff should see fit to demand payment, was not admissible to vary defendant's express written promise to pay the note ''one day after date, without grace.'' It is not claimed that by reason of fraud, accident, or mistake there was any failure to cause the written instrument to express the intention of either of the parties. There is no allegation or proof that defendant was induced by fraud or mistake to agree to the insertion of the clause making the note payable one day after date. That instrument was written by the defendant himself. What he did he did with his eyes open. And he is charged with knowledge that under the law of this state, Civil Code, section 1625, a written contract supersedes all preceding or accompanying oral negotiations or stipulations. [1] In the absence of fraud or mistake, the time of payment as fixed by the written terms of the note cannot be varied by any contemporaneous oral agreement. [2] The rule that a writing which purports to be the complete contract of the parties is deemed in law to be the full repository of the agreement or contract, that the whole contract is expressed by it, and that evidence of oral stipulations is not admissible to incorporate other elements in it or to alter or enlarge its terms, is applicable to negotiable as well as to non-negotiable instruments. (*Dollar* v. *International Banking Corp.*, 13 Cal. App. 331, 341 [109 Pac. 499]; see, also, *Booth* v. *Hoskins,* 75 Cal. 271 [17 Pac. 225]; *Pierce* v. *Avakian,* 167 Cal. 330 [139 Pac. 799]; *Kinsel* v. *Ballou,* 151 Cal. 755 [91 Pac. 620]; *Aud* v. *Magruder,* 10 Cal. 282; *San Jose Savings Bank* v. *Stone,* 59 Cal. 183; *Carver* v. *San Joaquin Cigar Co.,* 16 Cal. App. 767 [118 Pac. 92]; *Consolidated L. Co.* v. *Frew,* 32 Cal. App. 118

[162 Pac. 430]; *Foley* v. *Emerald etc. Brewing Co.,* 61
N. J. L. 428 [39 Atl. 650]; *Commercial Nat. Bank* v.
*Hutchinson Box etc. Co.,* 98 Kan. 350 [158 Pac. 44]; *Chero-
kee County* v. *Meroney,* 173 N. C. 653 [92 S. E. 616]; *Hall*
v. *First Nat. Bank,* 173 Mass. 16 [73 Am. St. Rep. 255, 44
L. R. A. 319, 53 N. E. 154]; and *Getto* v. *Binkert,* 55 Kan.
617 [40 Pac. 925].) [3] The fact that some of the evi-
dence relating to the alleged oral understanding was not
specifically objected to by plaintiff cannot affect the latter's
right to insist upon the agreement as written—as evidenced
by the promissory note. According to the modern view, and
the one which obtains in this state, the so-called "parol evi-
dence" rule—the rule which denies effect to an oral agree-
ment that varies a written contract entered into at the time
or earlier—is not merely one of evidence but of substantive
law. The accepted theory is, not merely that the writing is
the best evidence of the agreement, but that what is em-
bodied in the writing is the actual contract of the parties,
unless affected by fraud or mutual mistake. And, therefore,
the failure to object to the admission of evidence of such
an oral agreement does not alter the legal rights of the
parties, but its incompetency to vary the writing may be
considered as a matter of law. (See *Dollar* v. *International
Banking Corp., supra.*) The authorities bearing on this
question are collected in *Thompson Co.* v. *Foster,* 101 Kan.
14 [165 Pac. 841].

Equally unavailing as a defense is the fact, if it be a
fact, that subsequently to the execution of the promissory
note plaintiff's agent again told defendant that the instru-
ment would not become payable until payment should be de-
manded. Under the statute of this state, Civil Code, section
1698, a contract in writing may be altered by a contract
in writing or by an executed oral agreement, but not other-
wise. [4] Therefore, whatever may be the rule in juris-
dictions where there is no such statutory provision, it is the
established rule in this state that the time of payment as
fixed by the written contract may not be suspended or
extended by a subsequent unexecuted oral agreement.
(*Henehan* v. *Hart,* 127 Cal. 656 [60 Pac. 426]; *Harloe* v.
*Lambie,* 132 Cal. 133 [64 Pac. 88]. See, also, *Foster* v. *Fur-
long,* 8 N. D. 282 [78 N. W. 986].)

[5]   It cannot successfully be contended that plaintiff is estopped to claim that the note is payable according to defendant's express written promise to pay "one day after date, without grace." No oral agreement made prior to the execution of the written instrument, in conflict with defendant's written promise, can work such estoppel. [6] It is the general rule that, to work an estoppel, a statement or representation made during the negotiations that terminate in a written contract must relate to an existing fact and not to a mere promise of future performance. The only exception to this rule is where the representation relates to the intended abandonment of an existing right. The doctrine of estoppel, therefore, has no place for application when the representation relates to rights depending upon contracts yet to be made to which the person complaining is yet to be a party. He has it in his power in such case to guard in advance against any consequences of a subsequent change of intention or conduct by the person with whom he is dealing. For compliance with arrangements respecting future transactions, parties must provide by stipulations in their contracts when reduced to writing. (*Union Mutual L. Ins. Co.* v. *Mowry,* 96 U. S. 544 [24 L. Ed. 674, see, also, Rose's U. S. Notes] ; *Langdon* v. *Doud,* 10 Allen (Mass.), 433; *Thomson* v. *Langton,* 45 Cal. App. 415 [187 Pac. 970].) The rule is stated in Corpus Juris (volume 21, page 1142) as follows: "The doctrine of estoppel by representation is ordinarily applicable only to representations as to facts either past or present, and not to promises concerning the future which, if binding at all, must be binding as contracts." [7] Nor can estoppel be predicated of the oral statement alleged to have been made subsequently to the execution of the note to the effect that that obligation would not become due until payment should be demanded. [8] Aside from the fact that, by the express terms of his written contract, defendant specifically waived demand, the alleged representation was only of a present intention or purpose; and the rule is that the doctrine of estoppel will not arise simply from a breach of promise as to future conduct or from a mere disappointment of expectations. There was no consideration for any extension of the time of payment as fixed by the terms of the written contract. Nor did defendant alter his position by any affirmative action on his

part. Having the right to pay the note at any time after the day when it was delivered, he chose rather to remain inactive and to allow the interest to accrue. The statement of plaintiff's agent subsequent to the execution of the note to the effect that payment would not become due until demand should be made was not the statement of an existing objective fact or of a state of things actually existing on which a party might reasonably rely as fixed and certain, so as to be induced thereby to change his position, but was the statement of a present intention respecting a future course that was subject to change at any moment. Plaintiff, at any time, might conclude that he wanted his money and bring suit accordingly. The intent of a party, however positive and fixed, concerning his future conduct with respect to such a matter, is necessarily uncertain as to its fulfillment, and must depend upon contingencies and be subject to change and modification by subsequent events and circumstances. (See *Travis* v. *Davis,* 12 Ky. Law Rep. 825 [15 S. W. 525], and *Langdon* v. *Doud, supra.*) In this latter case, the Massachusetts court says: "The reason [of the doctrine of estoppel] wholly fails when the representation relates only to a present intention or purpose of a party, because, being in its nature uncertain, and liable to change, it could not properly form a basis or inducement upon which a party could reasonably adopt any fixed and permanent course of action." In taking leave of this question, it may indeed be said that if the doctrine of estoppel were extended to cover a situation such as we have here, it would subvert the salutary rule that a written contract must prevail over previous verbal arrangements, as well as the rule that a written contract can be altered only by a contract in writing or by an executed oral agreement, and would open wide the·door to all the evils which these two rules were intended to prevent.

[9] We are referred to subdivision 3 of section 1511 of the Civil Code, which, with the introductory portion of the enactment, reads: "The want of performance of an obligation, or of an offer of performance, in whole or in part, or any delay therein, is excused by the following causes, to the extent to which they operate: . . . 3. When the debtor is induced not to make it, by any act of the creditor intended or naturally tending to have that effect, done at or

before the time at which such performance or offer may be made, and not rescinded before that time." The oral statements by plaintiff's agent to the effect that the note need not be paid until after a demand could not excuse a "want of performance" of defendant's obligation to pay his debt. The debt remains until extinguished by payment. The extreme claim that could be advanced by the most plausible argument is that, under these provisions of section 1511, the oral statements made by plaintiff's agent at the time of and subsequent to the execution of the note excused defendant's "delay" in the performance of his obligation to pay. But this claim, if tenable, would have the effect of permitting a party to a written contract to alter by parol his most solemnly executed written obligation, and thus violate the express inhibitions of sections 1625 and 1698, and this notwithstanding neither party had been prevented by fraud or mistake from causing the writing to express his real intentions. We do not think that any such result was contemplated by the framers of section 1511. That section refers to "any act" of the creditor. It would seem that the legislature must have had in mind such an act as, being done in and about some matter not covered by the terms of the agreement, and entirely separate and apart from its terms, would operate to induce the debtor to delay performance of his obligation. It does not seem possible that the legislature intended to change, so far as the question of the maturity of an obligation is concerned, the rule of law forbidding the alteration of a written contract by parol. Here, according to the debtor's claim, there was an attempted oral agreement between the parties, which, if allowed to operate, would indubitably have the effect of varying the terms of the written obligation as to time of payment. If subdivision 3 of section 1511 applies to such a situation, the legislature has, in effect, declared that, as to one of the terms of practically every written agreement, that fixing the date of maturity, the writing may be varied by parol. It is inconceivable that such could have been the legislative intent. If the rule forbidding the alteration of written contracts by parol can be so readily circumvented, then a written instrument, however emphatically it may purport to be the embodiment of the entire agreement between the parties, will afford no obstacle to its facile and

convenient overthrow by any debtor who may be able to adduce an amount of parol evidence sufficient to induce a credulous jury to believe that the time fixed by the writing for the maturity of the obligation is not that which the parties contemplated. We decline to give to section 1511 a construction that leads to a result so at variance with the ''parol evidence'' rule.

[10] No demand was necessary before the suit was commenced; nor was it necessary to make presentment of the note at the bank where it was made payable. It is settled in this state, both at common law and now by statute, and by the weight of authority in the other states of this country, contrary to the law in England, that where a note is payable at a particular time and place neither demand nor presentment at the place named is necessary in order to entitle the holder to maintain an action against the maker to recover the principal. The failure to make presentment at the place named would not discharge the debt. At most it could be pleaded only as a defense to the recovery of costs or interest, and then only if the maker were ready and willing to pay his note at maturity at the place fixed for payment. See *Montgomery* v. *Tutt,* 11 Cal. 307, where the court, on page 327, says: ''The understanding of the parties, and the legal effect of such contracts is this: That if ready at the time and place with the funds, the obligor has so far satisfied the contract that he cannot be responsible for any future damages, either as costs of suit or interest for delay; not that he is thereby discharged of the debt.'' Section 3151 of the Civil Code (Negotiable Instruments Law, Stats. 1917, p. 1543) reads: ''Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; but if the instrument is, by its terms, payable at a special place, and he is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment upon his part. But except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and indorsers.'' The maker of a note is ''the person primarily liable'' (*Jones* v. *Nicholl,* 82 Cal. 32 [22 Pac. 878]; *Nichols* v. *Asbeck,* 179 Cal. 695 [178 Pac. 705]); and by the express terms of the statute, presentment is not necessary to

charge "the person primarily liable," even though the instrument be payable at a special place.

[11] The ability and willingness of the maker of a note to pay it at maturity at the place named therein is a matter of defense that must be pleaded and proved by him, if he would establish the equivalent of a tender and thus prevent the holder from recovering further interest and costs of suit. (See *Florence Oil etc. Co.* v. *First Nat. Bank,* 38 Colo. 119 [88 Pac 182]; *Greeley* v. *Whitehead,* 35 Fla. 523 [48 Am. St. Rep. 258, 28 L. R. A. 286, 17 South. 643], and *Nichols* v. *Asbeck, supra.*) Here defendant made no attempt to show that he was able and willing to pay the note at the time when, according to its terms, it was due and payable. On the contrary, his claim throughout was that he was not to make payment at that time. But even if he had been able and willing to pay at the date of maturity fixed by the terms of the note, so as to constitute such ability and willingness the equivalent of a tender, that would not extinguish plaintiff's right to the principal of the note nor deprive him of the right to a judgment therefor. A tender does not pay the debt. At most such tender, if made, would only stop the running of interest and deprive plaintiff of his right to recover costs, and, possibly, his right to the stipulated attorney's fees. (Civ. Code, sec. 1504; Code Civ. Proc., sec. 1030; *Himmelmann* v. *Fitzpatrick,* 50 Cal. 650.)

Our conclusion is that nothing that transpired prior to the commencement of the action was a defense thereto. It only remains to consider the effect of the deposit in the bank after the action was brought.

Respondent's claim that his obligation to pay the debt for which plaintiff has sued him was extinguished by his depositing in the bank a sum of money equal to the principal and accrued interest—a sum deposited two days after the action was brought—is evidently based on section 1500 of the Civil Code, which reads: "An obligation for the payment of money is extinguished by an offer of payment, if the amount is immediately deposited in the name of the creditor with some bank of deposit within this state, of good repute, and notice thereof is given to the creditor." There is no evidence that the money was deposited with the bank in the name of plaintiff. [12] To effect the extinguish-

ment of an obligation under this code section there must be a full compliance therewith; and a failure to deposit the money in the name of the creditor is fatal to any claim of extinguishment. (*Segno* v. *Segno,* 175 Cal. 743 [167 Pac. 285].) **[13]** Moreover, the money was not deposited with the bank until after the commencement of the action; and, since it did not include the attorney's fees to which plaintiff became entitled when he sued, it was for an amount less than the sum to which, when plaintiff brought his action, he was entitled. For these reasons alone the deposit with the bank not only could not extinguish the debt, but it could not preclude plaintiff from recovering his costs and attorney's fees. (Code Civ. Proc., sec. 1030; *Fell* v. *Frierson,* 171 Cal. 351 [153 Pac. 229].)

The judgment is reversed.

Works, J., and Craig, J., concurred.