[Civ. No. 10565. Second Appellate District, Division One.—May 14, 1936.]

COLUMBIA CASUALTY COMPANY (a Corporation), Respondent, v. RAYMOND LEWIS, Appellant.

George A. Work for Appellant.

Redman, Alexander & Bacon and George H. Moore for Respondent.

WHITE, J., *pro tem.*—This is an appeal by the defendant Raymond Lewis from a judgment rendered against him upon a promissory note, after the trial court had directed the jury to disregard his defenses and counterclaims, and had further directed the jury to find a verdict for the plaintiff upon all issues except the amount of the attorney's fee to be allowed the plaintiff. Upon rendition of the verdict as directed by the trial court, judgment was entered accordingly in favor of plaintiff.

The plaintiff brought this action against the defendant Raymond Lewis upon a promissory note dated June 1, 1932, in the amount of $16,187.39, payable on demand, with interest, the payment of which was secured by an assignment executed by the defendant Lewis to the plaintiff at the time the note was given, assigning $16,187.39 of moneys which might thereafter accrue to defendant Lewis out of dividends or profits from Macco-Lewis, Inc., one of the defendants herein, in which corporation the defendant Lewis owned one-third of the stock. Macco-Lewis, Inc., is a nominal defendant herein, and has no interest in this controversy, nor does anyone involved in the litigation claim any right against this company in so far as this appeal is concerned. The plaintiff had moneys in its hands belonging to Macco-Lewis, Inc. On November 13, 1934, the sum of $20,000 of such moneys became the property of defendant Lewis by way of a dividend, and this $20,000 is now in the hands of plaintiff, and constitutes the $20,000 referred to in the judgment as security for the payment of the promissory note, and which amount plaintiff claims the right to hold under the assignment.

The execution of the note and the assignment were admitted by defendant Lewis, and at the trial it was stipulated by counsel for both sides "that said note had not been paid otherwise than in so far as payment thereof might be deemed to have taken place by reason of the matters set forth in the answer and counterclaim of the defendant Raymond Lewis, and that unless the proof of the matters therein contained

should show payment or setoff, the said note had not been paid''.

Prior to a recital of defendant's claims in his answer and counterclaim we deem it advisable to epitomize the facts in so far as they appear material and relevant to a consideration of the points raised on this appeal. On or about October 19, 1931, the C. Anili Company entered into a written agreement with the Los Angeles County Flood Control District for the performance of certain work described in said agreement; and said C. Anili Company as principal, and the respondent herein, Columbia Casualty Company, as surety, executed to said district as obligee thereunder the statutory labor and material bond and statutory faithful performance bond, as required by law. Under the terms of said faithful performance bond the respondent herein, as surety, was obliged to perform all the terms and conditions agreed to be performed by the said C. Anili Company under said agreement, in the event the said C. Anili Company should not perform the same. Said C. Anili Company entered upon the performance of said agreement with the flood control district on or about November 12, 1931, and continued with the performance thereof until on or about December 12 of the same year, on which last-named date said C. Anili Company defaulted in the performance thereof, and the Los Angeles County Flood Control District thereupon tendered the completion of the contract to the respondent casualty company, upon the latter's statutory faithful performance bond. The respondent thereupon accepted said tender of completion and undertook to complete and did complete the work in question.

On December 30, 1931, respondent herein entered into a written agreement with appellant, the recitals of which set forth the award of the contract hereinbefore referred to; the default of C. Anili Company thereunder; the tender of the completion of the contract to respondent, and the latter's desire to sublet the completion of said contract to appellant herein. The appellant, as subcontractor, agreed to accept as full compensation certain stipulated unit prices for the balance of the uncompleted work, which payments were to be made by respondent to appellant when and as received from the flood control district. The agreement further provided that respondent was to turn over to appellant for his

free use on the contract the equipment owned by the C. Anili Company, and which equipment was described in the contract. The appellant herein, as such subcontractor, agreed to undertake the work and perform the same in accordance with the plans and specifications under which the original contract was let.

Appellant in his answer set up the defense, in substance, that the note was without consideration, for the reason that he had completed the Anili work as agent for the respondent casualty company. Appellant further claimed that the amount represented by the note was for bills contracted on the work while he was completing it as agent for respondent, and that said money was paid by respondent casualty company direct to claimants in payment of its own bills, for which appellant was not responsible, he being simply the agent of respondent. Appellant further claimed that respondent had agreed with him at the time the note was given that the same would be held by respondent until a final accounting should take place between the parties with respect to the completion of the Anili Company work, and that there had never been any accounting between them. Appellant further contended in his answer that it would appear upon an accounting that respondent was not entitled to recover or receive any sum whatsoever by reason of the execution of the promissory note, but that on the contrary, such accounting would develop that respondent was indebted to appellant herein in an amount exceeding $10,000.

Appellant contends that the agreement of December 30, 1931, was abandoned; that a novation was effected between himself and respondent, under the terms of which he completed the contract as the agent of respondent casualty company, pursuant to the terms of this novation. He also pleaded a second defense inconsistent with the first, in which he claims that should it be decided that the agreement of December 30, 1931, between himself and respondent had not been abandoned, and that a new contract had not been entered into by novation, then in that event, that respondent had breached and violated the agreement of December 30, 1931, between it and appellant.

In support of his claim that the agreement of December 30, 1931, was abandoned, and that a novation was effected, appellant testified that after the signing of the contract he

commenced work thereunder, but encountered difficulties not of his own making, some of which he asserted grew out of misrepresentations of respondent casualty company unintentionally made; and that shortly before the middle of January, 1932, in a conversation with Griffith R. Williams, the general attorney for the respondent, casualty company, Lewis claims that the contract of December 30, 1931, was abandoned, and a new agreement entered into, under the terms of which he was to proceed to complete the work as agent of respondent casualty company. After reciting the difficulties he encountered, appellant states that he repeated this situation to Mr. Williams, saying to the latter that as far as appellant was concerned he was "finished with the contract that was entered into on December 30, 1931, . . . that the job was 'sour'; that every major thing that had been promised (appellant) on the job turned out to be otherwise, and that the job was running into a rotten situation"; and that appellant would not continue with the contract. Appellant in his testimony claimed that Mr. Williams tried to talk him into continuing with the contract, and finally said, "Go ahead—things will get better. Well, go ahead and finish the job. It is our baby. Now the job is sour—it is a lemon. We have got to finish it. You go ahead and finish it and we will see that the job is taken care of; the expenses are taken care of—and see you don't lose any money, and get a fair profit on the job."

The only other evidence with reference to the alleged abandonment of the contract of December 30, 1931, was offered by the witness Griffith R. Williams, general attorney for respondent casualty company, whose testimony might be summarized in the following language used by him on the stand:

"I still refer to my statement to him in January when he was about to throw up his hands, that I would take care of him, the company would take care of him. I entered into no conditions with reference to the new contract, as to profits or anything like that. I just wanted him to continue with that contract and not throw up his hands, but to continue with it, and we would see that he would come out in the clear on it. That was my intention at the time because the man was suffering a lot and had suffered a lot at that time, and when you are referring to the taking of this note and assignment, I didn't know how the thing could be ad-

justed; I had no idea how we were going to deal with Mr. Lewis until every transaction was in and the thing could be equitably looked upon. Well, that is the substance, . . . that he would be taken care of, that he wouldn't sustain a loss in continuing the contract for us on moneys, when he was starting with a loss staring him in the face, when he wanted to throw it up. . . . I had made no recommendation to my superiors in my office. I didn't know how they would look upon it. I hadn't done any of those things, . . . I had no new contract with him in the sense of terms written out, and I was working on the theory of the terms of the old contract, with the promise I had made to him at the time he was about to throw it up. . . . I wanted Mr. Lewis to continue with the work and at the very end after the thing was completed and all the moneys were in hand, we were to sit down and adjust the whole thing amicably between us, according to my original promise to him two or three weeks after he entered into this contract with us, where I promised him that we would see that he wouldn't be hurt in continuing with the job.''

Appellant also testified that he had received some $33,787.87 in payments made direct to him, and that the Columbia Casualty Company had issued checks direct to employees in a sum exceeding $5,000, while creditors and materialmen were paid in excess of $21,000 directly by respondent casualty company.

Section 1530 of the Civil Code defines a novation as ''the substitution of a new obligation for an existing one''; while the succeeding section, in subdivision 1 thereof, declares that a novation may be made ''by the substitution of a new obligation between the same parties, with intent to extinguish the old obligation''. In our opinion, the evidence does not support appellant's claim that a novation took place, because three essential elements of novation are missing. First, the agreement of all parties to the contract was not present, as it is readily seen that conceding the authority of Mr. Williams, the general attorney for respondent, to bind the latter, he at no time consented to the proposal of appellant, if such proposal was offered, to substitute a new agreement for the one of December 30, 1931, but on the contrary, respondent's general attorney contended throughout his testimony that he had no new contract with appellant and was at all times

working on the theory of the terms of the old contract, with the promise that if appellant would go ahead and complete the work, that "when the moneys were all in the parties would sit down and amicably adjust their differences". Secondly, the evidence fails to disclose any mutual agreement between the parties to extinguish the old contract; and thirdly, there is an utter absence of proof to sustain appellant's contention that a new and valid contract was made by the parties. ▉ Before courts will set aside solemn binding written contracts and substitute therefor oral agreements, proof of the latter as to every element thereof, as well as execution, must be clear and convincing. (*Houghton* v. *Lawton,* 63 Cal. App. 218, 223 [218 Pac. 475].) ▉ And whether we consider the alleged oral agreement between the parties here as a mere modification of the written contract, or a novation, it lacks the requirements of the statute to make it enforceable, because, obviously, the executed oral agreement which may be proved for the purpose of altering a previous written contract, must consist in the doing or suffering of something not required to be done or suffered by the terms of the writing; and in the instant case it appears that appellant proceeded to fulfill the requirements of the written contract, completed the work provided for therein, and accepted payments thereunder. (*Harbor Const. Co.* v. *Walters,* 101 Cal. App. 470, 478 [281 Pac. 1062].)

▉ From the foregoing it is evident that the trial court was correct in sustaining objections to proffered questions tending to vary the terms of the written contract by parol. "A written instrument would afford but slight protection to the parties in such cases if it could be varied in this manner; a bailment could be converted into a sale, or a sale into a bailment, according as the interests of either party, after delivery of the goods might lead him to the belief, real or feigned, that the delivery had not been pursuant to the original writing, but under a subsequent oral arrangement." (*MacKenzie* v. *Hodgkin,* 126 Cal. 591, 598, 599 [59 Pac. 36, 77 Am. St. Rep. 209].)

▉ Much of what we have said concerning the alleged abrogation of the contract of December 30, 1931, applies to appellant's second cause of counterclaim, wherein it is contended that should the jury find adversely to appellant's claimed novation, then appellant was entitled to damages by

reason of respondent casualty company's breach of the agreement of December 30, 1931, and by reason of alleged misrepresentations in connection therewith.

It appears from the evidence that another contractor named Rowland agreed with the flood control district to construct a levee, upon which appellant herein was to do concrete and gunite work. At the trial appellant offered to prove that the respondent casualty company did not provide him with, and did not see that he was provided with, sufficient levee so as to enable appellant, in conformity with his contract of December 30, 1931, with respondent, to operate two cement guns two eight-hour shifts per day. The trial court sustained objections to this line of testimony on the ground that the same was incompetent and tended to vary the terms of a written contract. In this we think the court was correct, because, while the so-called Rowland contract for construction of the levee was an independent agreement with the flood control district, still the plans and specifications which controlled the Rowland contract were part and parcel of the plans and specifications governing the Anili contract, the completion of which latter contract was taken over by appellant under the agreement of December 30, 1931, with respondent casualty company. In fact, the last-mentioned contract with the Anili Company specifically adopted as a part thereof the plans and specifications in question. Therefore all of the duties and obligations of the Rowland contract were specifically made a part of appellant's contract and he had knowledge of them. Not being ambiguous or uncertain in their terms, there was no basis for the introduction of oral testimony in explanation thereof.

The matters complained of in appellant's first defense and counterclaim, which includes the allegations that the respondent casualty company violated paragraph 3 of the agreement of December 30, 1931, in that it did not make available to appellant certain cement guniting machines and other equipment, did not require any parol testimony, because the same was taken care of in the letter of January 8, 1932, marked ''Plaintiff's Exhibit 25'' at the trial, in which respondent casualty company wrote appellant that the letter in question was written to supplement and clarify certain details of the written contract, and which letter provided that appellant was to be relieved of responsibility for defec-

tive work done by his predecessor, C. Anili Company; and with reference to the equipment agreed to be furnished in the written contract, the aforesaid letter advised appellant of certain difficulties that had arisen in connection with such equipment by reason of the fact that it had been rented by the C. Anili Company from equipment houses, and authorized appellant to make use of any of this equipment by taking up the Anili contracts with the equipment houses, and agreed that the respondent casualty company would assume the rental under such contracts for the period "from the beginning of the job to January 6, and you are to assume the remainder of it; the amount of your rental would be from January 5th on at a prorated price. Any rented equipment that you do not care to use you are to return to the parties from whom rented and render bill to the Columbia Casualty Company for the expense of such return." In the face of this record, we are of the opinion that no parol testimony was required to explain or perfect any ambiguities or imperfections in the written contract and the supplemental letter.

With reference to the claim of appellant that the respondent casualty company violated the terms of its contract in not compelling the contractor Rowland to provide for appellant levee sufficient to enable appellant to operate two cement guns for two eight-hour shifts per day, for the purpose of placing gunite facing upon said levee, as required by paragraph 6 of the agreement of December 30, 1931, it might be observed that the contractor Rowland had a separate and independent contract with the flood control district, which contract was based upon the same plans and specifications that governed the work undertaken by appellant as subcontractor. Respondent casualty company had no control over the contractor Rowland. It could not direct him what to do, nor how much levee to construct; and in our opinion, therefore, respondent casualty company should not be held responsible for a failure to compel the contractor Rowland to do something over which the respondent casualty company had no control. The flood control engineer, representing the flood control district, alone had the right to order both Rowland and appellant how to proceed and how rapidly to prosecute their work. In our opinion, therefore, the contracts, and the exhibits attached thereto and made a part thereof, speak for themselves, and the trial court was right in hold-

ing that the relative rights, duties and responsibilities of the parties thereunder, including appellant, were to be determined from the language of the written instruments themselves.

Section 1639 of the Civil Code provides, "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this title"; while section 1856 of the Code of Civil Procedure provides:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases:

"1. Where a mistake or imperfection of the writing is put in issue by the pleadings;

"2. Where the validity of the agreement is the fact in dispute.

"But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section eighteen hundred and sixty, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term agreement includes deeds and wills, as well as contracts between parties."

As was said in *Germain Fruit Co.* v. *J. K. Armsby Co.*, 153 Cal. 585, 595, 596 [96 Pac. 319]:

" . . . To hold parties to diligence and care in reducing their negotiations to writing, and to hold the writing to be subject to attack only by specific allegations of fraud or mistake, appears to be the better rule, and is now supported by the weight of authority. Like the statute of frauds, this rule is founded upon long and convincing experience that written evidence is more certain and accurate than 'slippery memory'. So long as the rule is applied, the actual contract made can be preserved without fear of its being affected in its terms by the frailties of an interested human recollection. That sometimes the written contract does not include all the terms intended by reason of neglect or oversight, and injustice is thereby done in particular cases, does not justify the abandonment of the rule. To construe it away is to destroy one of the greatest barriers against fraud and perjury."

See, also, *Standard Box Co.* v. *Mutual Biscuit Co.*, 10 Cal. App. 746, 754, 755 [103 Pac. 938] ; *Nimmo* v. *Fitzgerald*, 202 Cal. 565, 568 [261 Pac. 1015] ; *Calpetro P. Syndicate* v. *Chas. M. Woods Co.*, 206 Cal. 246, 251, 252 [274 Pac. 65].

In the instant case no mistake or imperfection of the written agreement was put in issue by the pleadings, nor was the validity of the agreement the fact in dispute, nor was illegality or fraud asserted. The objections to appellant's proffered testimony in connection with his second cause of counterclaim were properly sustained.

██ What we have said with reference to the. contract and appellant's second cause of counterclaim applies with equal force to the attempt to vary the terms and conditions of the written note and assignment given therewith by oral testimony. That clear and convincing evidence of an executed oral agreement varying the terms of a written one should be required is the policy of the law, is evidenced by section 1698 of the Civil Code, laying down the valuable and salutary rule that a contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise. It has been held, for instance, that parties who have made a promissory note may not, after it has become due according to the time written therein, make the defense that it is not due by reason of a parol promise to extend the time, which promise would depend upon the credibility of interested witnesses. (*Henehan* v. *Hart*, 127 Cal. 656, 658 [60 Pac. 426].) In the case of *Rottman* v. *Hevener*, 54 Cal. App. 474, 482, 483 [202 Pac. 329], the court says:

"If the rule forbidding the alteration of written contracts by parol can be so readily circumvented, then a written instrument, however emphatically it may purport to be the embodiment of the entire agreement between the parties, will afford no obstacle to its facile and convenient overthrow by any debtor who may be able to adduce an amount of parol evidence sufficient to induce a credulous jury to believe that the time fixed by the writing for the maturity of the obligation is not that which the parties contemplated. We decline to give to section 1511 a construction that leads to a result so at variance with the 'parol evidence' rule."

In the instant case the note and collateral assignment were made and delivered for value, viz., the payment of the list of bills tendered by appellant to respondent. It is conceded that the bills were paid promptly. These bills were incurred

by appellant, in our opinion, in connection with the written contract herein referred to, in connection with which appellant received benefits in the form of thousands of dollars in cash and several thousands in addition thereto paid by respondent casualty company to creditors who furnished materials or labor in connection with the work done by appellant.

Appellant's contention that the trial court fell into error in directing a verdict in favor of respondent is, in our opinion, without merit, because under the evidence in this case no other reasonable conclusion is legally deducible therefrom than that a verdict in favor of appellant herein, if such a verdict had been given, would of necessity have been set aside by a reviewing court, because of the absence of evidence of sufficient substantiality to support the same. (*Newson* v. *Hawley,* 205 Cal. 188 [270 Pac. 364] ; *Perera* v. *Panama Pacific Int. Exp. Co.,* 179 Cal. 63 [175 Pac. 454] ; *Estate of Lances,* 216 Cal. 397 [14 Pac. (2d) 768] ; *Estate of Flood,* 217 Cal. 763, 768 [21 Pac. (2d) 579].)

No other points raised on this appeal require discussion. For the reasons given, the judgment herein appealed from is affirmed.

York, J., concurred.

Houser, P. J., dissented.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 5, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court, on July 13, 1936.