[Civ. No. 16767. Second Dist., Div. One. May 10, 1949.]

P. S. O'REILLY, Appellant, v. JOHN S. JOHNSON, Respondent.

Paul R. Hutchinson for Appellant.

Barry Sullivan for Respondent.

DORAN, J.—This is an appeal from the judgment.

The action is for an accounting and one-half of the profits earned in a joint venture of plaintiff and defendant.

The answer in addition to a general and special denial alleges an affirmative defense of estoppel in that plaintiff

had accepted payment of a certain sum in full settlement, also that the contract had been fully performed by defendant.

The facts as recited by appellant are as follows:

"Plaintiff was a doctor. Defendant was a contractor. They orally agreed that plaintiff would put up the capital and they would buy a house, fix it up, sell it and divide the profit. The house was purchased in January, 1945, at a cost of $4,300.00. Plaintiff advanced $4,020.00 of the purchase price, and defendant advanced the remaining $280.00.

"Defendant took title to the property in his own name. Plaintiff contended that title was to have been taken in their joint names, and that defendant breached their agreement by taking title alone without plaintiff's consent. Defendant testified that it was agreed that title was to be taken in his name. The court made no finding on this point. Nevertheless, in this way defendant controlled the sale of the property and eventually the proceeds of the sale.

"Defendant moved into the property and worked on its improvement while carrying on other work. He lived in the house until it was sold in August, 1946. That was for a period of approximately twenty months.

"The house was sold for $9,000.00, and yielded a net of $8,467.32 after commission and costs of sale. The defendant received all of that money.

"Plaintiff alleged that defendant failed and refused to render him an accounting or pay plaintiff his proportionate share of the profit. Defendant denied this, but the evidence shows that at no time did he ever render plaintiff an accounting of the profits of the joint venture. In fact the joint venture, the contribution of the parties, the gross profit, and the receipt of that profit by defendant are all admitted by the evidence or found to be true by the findings.

"Defendant's theory of the case now is that no accounting of profits or findings thereon are necessary because, he contends, there was a novation. He pleaded as a special defense that after the house was sold he sent to plaintiff his check for $4,431.65, which plaintiff accepted without any objection 'as a cancellation of the former agreement and as a satisfaction of his claim against said defendant'.

"In awarding judgment to defendant, the trial court made the following findings: After the gross proceeds of the sale were received by defendant there arose 'an honest dispute as to the way said profits should be divided. On October 25, 1946, the defendant offered the plaintiff the sum of Four

Thousand and Twenty Dollars ($4,020.00), the amount which plaintiff had invested in said property with interest thereon at 6% per annum from the date of the purchase and enclosed a cashier's check in the sum of Four Thousand Four Hundred and Thirty-One Dollars and Sixty-five cents ($4,431.65), said sum being the Four Thousand and Twenty Dollars ($4,020.00) plus interest for twenty months at 6% per annum; that prior to this offer, the defendant promised the plaintiff that he, the defendant, would guarantee the plaintiff the return of money the plaintiff had invested in the property plus interest. The plaintiff accepted said offer, cashed the check and accepted the proceeds therefrom; that this executed agreement is a novation of any agreement entered into by the plaintiff and defendant in January 1945 concerning the buying and selling of said property.' ''

There is no evidence in the record to establish a novation either directly or indirectly. The only evidence that suggests a novation is the testimony of defendant. In this connection defendant testified:

"I told Dr. O'Reilly that I had lost money on that deal any way I figured it out . . . and that I thought he was entitled to the interest on the money, and regardless of what I got for it I would assure him the interest on his money."

There is no testimony that plaintiff replied to the remark; there is no evidence of any conversation on the subject. And plaintiff denied that the remark was made.

As appellant correctly points out, "the remark made by defendant was neither an offer, nor a contract, and hence not a novation. A novation must have all the elements of an original contract. The law of novation is codified and its interpretation is clear.

" 'Novation is the substitution of a new obligation for an existing one.' (Civil Code, sec. 1530.)

" 'Novation is made: (1) By the substitution of a new obligation between the same parties, with intent to extinguish the old obligation. . . .'' (Civil Code, sec. 1531.)

" 'Novation is made by contract and is subject to all the rules concerning contracts in general.' (Civil Code, sec. 1532.)

" 'Whether a new agreement amounts to a novation is always a question of intention; and intention on the part of all parties that such agreement should constitute a novation must clearly appear.' '' (20 Cal.Jur. 249; *Douillard* v. *Woodd,* 20 Cal.2d 665 [128 P.2d 6]; *Columbia Casualty Co.* v. *Lewis,*

14 Cal.App.2d 64 [57 P.2d 1010] ; *Bank of America* v. *Pacific Ready-Cut Homes*, 122 Cal.App. 554 [10 P.2d 478].)

The business relations between plaintiff and defendant had their beginning in the following manner as related by plaintiff and conceded by defendant. Plaintiff testified:

"A. I operate the Glendale Emergency Hospital, and practice traumatic surgery.

"Q. You are not a contractor? A. No.

"Q. Or a real estate broker? A. No, sir.

"Q. How long have you known John S. Johnson, the defendant? A. I believe—it is my recollection as near as I can fix it about 1940.

"Q. And under what circumstances did you meet him, and how intimately and how closely do you know him? A. His brother worked for me as maintenance man around the hospital, and also on various other jobs where I built houses; and when I built an apartment, why, his brother—I gave the contract to his brother, and he brought Mr. Johnson in to work with him, and that is where I first met him. It was about a year prior to the war. It would be about 1940.

"Q. Did you have any other business relationships with the Johnson family? A. With the other brother, yes, Emmett.

"Q. Was John S. Johnson present on any of those deals? A. No.

"Q. When did you first discuss a business relationship with the defendant? A. It was in the latter part of December of 1944.

"Q. Where did this conversation take place? A. In my office.

"Q. Was anybody else present? A. Not that I recollect.

"Q. What was said between you and Mr. Johnson at that time relative to any business relationship between you? A. I told him that his brother was leaving my employment to go south, and that I had several prospective pieces of property that I wanted to purchase and get fixed up, and put back on the market, and asked him if he was interested in going into the project with me.

"Q. What did he say? A. He said he was."

When the transaction was completed and when plaintiff sought an accounting, the result was as above outlined. Plaintiff accepted the check as a matter of right and not as the beneficiary of defendant's magnanimity. In no sense did the acceptance of the check by plaintiff indicate an intent to

waive the further right to an honest accounting and an equal share of the profits of the transaction.

As above noted, there is no evidence to support the court's finding and conclusion as to a novation.

 The court also failed to find on other material issues as contended by appellant. For example, plaintiff's action was for an accounting and the findings contain no reference to this important issue. And findings were not waived. "It has been repeatedly affirmed that where a court renders a judgment without making findings upon all material issues of fact, the decision is against law, and constitutes ground for . . . reversal upon appeal, provided it appears that there was evidence introduced as to such issue and the evidence was sufficient to sustain a finding in favor of the party complaining." (24 Cal.Jur. 940.)

"The failure to find on all material issues raised by the pleadings and evidence is ground for reversal, unless findings have been waived." *Parker* v. *Shell Oil Co.* (1946), 29 Cal.2d 503, 512 [175 P.2d 838]; *Fairchild* v. *Raines* (1944), 24 Cal.2d 818, 830 [151 P.2d 260]; *Dieterle* v. *Bekin,* 143 Cal. 683 [77 P. 664].

Appellant's exception to the finding that at the time the check was sent there was, "an honest dispute as to the way said profits should be divided" and its relation to the law of accord and satisfaction need not be considered although it should be noted it is not without merit. The burden to prove the accounting was on defendant.

For the foregoing reasons the judgment is reversed and the cause remanded for a new trial.

White, P. J., concurred.

Drapeau, J., did not participate herein.