[Civ. No. 7074.   Fourth Dist.   Apr. 18, 1963.]

ERNEST B. PIERCY, Plaintiff and Appellant, v. ROCCO DE FILLIPES et al., Defendants and Respondents.

Marshall Miles for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

GRIFFIN, P. J.—Plaintiff-appellant, on an assigned promissory note for collection from one Daniel Jay, brought this action on the note signed by defendants-respondents Rocco De Fillipes (hereinafter referred to as Rocco) and Joe De Fillipes for $3,500. It was dated February 4, 1957, and was payable $75 per month, plus 6 per cent interest beginning March 4, 1957. The note provided that if interest was not paid when due the whole sum would become immediately due and payable. Defendants defaulted in the payments due after reducing the principal balance to $3,326.54 as of May 1, 1957. Demand for payment was refused and this action followed. The due execution of the note was duly admitted, as well as the payments thereon and that it was duly assigned to plaintiff. The note was admitted in evidence.

By answer, the only defense pleaded was that in May 1957: ". . . there was a bona fide dispute between the plaintiff and defendants in reference to the amount of money owed by defendants to plaintiff under the alleged promissory note . . . that . . . plaintiff and defendants had an accounting and orally mutually agreed and pursuant to said oral agreement did then and there rescind and cancel said promissory note. . . ."

On the trial of the issue presented, defendant Rocco De Fillipes testified that at the time the note was executed, on February 4, 1957, he talked with Daniel Jay, the payee, in connection with its execution. Objection was then made as to the admissibility of any statement in reference to such oral conversation between them as an attempt to modify the written terms

of the note. The court took the objection under submission "subject to motion to strike later." Rocco then stated that Jay had a confectionery and restaurant supply route over the county and would like to sell it; that the business was doing about $3,500 a week and the commission on it would run about 25 per cent of that amount; that he bought the route at $3,500 and Jay said: ". . . that if the business doesn't do $3500.00 after a few months that he would take it back. He says he guaranteed it that it would make $3500.00 a month [*sic*] because that's what the business was doing."; that his father was asked to sign as cosigner because he (Rocco) was unable to pay anything down, and that was about all that was said; that he purchased a truck and bought supplies from Jay at his warehouse and operated the route for about two months; that he was unable to obtain sufficient supplies for his route and little by little his income diminished to $2,500 or $2,700 per week; that about that time he told Jay:

". . . that when we signed the contract and everything, when I first took over the business and he guarantee [*sic*] me that he would take — that the business was doing $3500.00 a week and that we would try for a couple of months and after a couple of months if the business, regardless of what it was, if it didn't work out, take the business back. And after a couple of months in May when this all came about that I couldn't get enough material to supply my route, I asked him one day, I said, 'Danny, we can't make it. What say we just dissolve the partnership?' '';

that they agreed to do so and that consequently he left his truck there and Jay unloaded the merchandise from the truck; he said he quit and he heard nothing more from Jay until Jay demanded the money on the note and filed this action on October 20, 1960. The record indicates no arrangement about a partnership between them. Rocco said that Jay orally agreed to supply him with merchandise; that he bought it on credit from Jay and turned over the proceeds to that account, which was delinquent, and that he kept $45 to $50 per week for his own expenses and allowance; that Jay never said he would cancel the note or anything to that effect, but he did say, "We'll dissolve the business," and Rocco said he took for granted that that meant to cancel the note. A motion was then made to strike part of this testimony in reference to the oral agreement to purchase his merchandise from Jay, under the same parol evidence rule. It was denied. Defendants rested their case.

Jay testified that the route was grossing him around $3,800 to $4,000 per week when he sold it to defendant Rocco; that he never guaranteed that Rocco would be able to gross $3,500 a week and never told him if he failed to make that amount he (Jay) would take the route back and cancel the note. Jay also testified that at the end of two months defendant Rocco came to him and said he was going to quit and he reminded defendant that he (Jay) had money coming to him on the note, that it was a good route and he had neglected the route, and that with more effort he could build it up to make a good salary; that he noticed Rocco was not purchasing as much merchandise from him as usual, but he assumed he was buying it elsewhere because he had no agreement with Rocco to buy his merchandise exclusively from him; that Rocco's account with Jay gradually fell behind in payment to the extent of "thousands of dollars." Jay was asked, on cross-examination, why he waited nearly three years to bring the action, and he replied that after Rocco left he (Rocco) was divorced from his wife and disappeared and quite a few people were looking for him; that he was unable to locate Rocco, but when Rocco returned to town he was served with process. Jay testified that in the meantime he endeavored to service the route as before for about three months and then sold it and retired from business. His bookkeeper testified that she sent the unpaid signed invoices and a statement of the unpaid note to Rocco at his last known address, by registered mail, and they were returned unclaimed.

Counsel for plaintiff again renewed his motion to strike all the testimony as to any oral agreement pertaining to an alleged guaranty made at the time of the execution of the note, under the parol evidence rule. The ruling was again reserved. Rocco denied disappearing for any length of time, but claimed that he moved to another address in San Bernardino and did not receive any accounting from Jay as to any balance due him. He said he did not thereafter see Jay. He was asked why he did not ask for the return of the note and he said that he was "disillusioned" by the whole thing.

The matter was submitted and the court failed to rule on the motion to strike or the objections made to the admissibility of this evidence and ordered findings in favor of defendants.

The court found the allegations of plaintiff's complaint to be true and that the affirmative defense stated in the answer was true. Judgment was entered denying recovery to plaintiff in any sum.

Plaintiff has filed a brief citing such authorities as *Rott-man* v. *Hevener*, 54 Cal.App. 474 [202 P. 329] ; and 18 California Jurisprudence 2d, sections 256 and 257, at pages 740-741, where it is said:

". . . the extrinsic evidence rule and the statutory declaration thereof, is not truly a rule of evidence, but is a rule of substantive law.

"      .      .      .      .      .      .      .      .      .      .      .      .      .

". . . extrinsic evidence is neither admissible to vary such a contract nor, if admitted without objection, sufficient to support a finding which is in conflict with or in any manner varies the original written contract. The purpose of the extrinsic evidence rule is to prohibit the varying of the writing by extrinsic or parol evidence, while the rule against admission of secondary evidence goes only to the form in which the evidence may be introduced." (*Citing Dollar* v. *International Banking Corp.*, 13 Cal.App. 331 [109 P. 499].)

Defendants have not seen fit to file a respondent's brief, and accordingly the burden of a search for an answer to appellant's argument and contentions must fall upon this court. The only penalty is that this court may accept as true the statement of facts in the appellant's opening brief. (Cal. Rules of Court, rule 17 (b).)*

Since the plaintiff would be entitled to recover on the note in the absence of competent evidence of a legitimate defense to the action, and because of the trial court's failure to rule on the objection to the testimony and the motion to strike, we probably must assume that the trial court considered the evidence attempted to be stricken and rendered judgment upon it. Otherwise, judgment of necessity would have had to be rendered in favor of plaintiff.

█    The practice of neglecting to rule on motions to strike, where a proper motion is made immediately before the case is submitted, has been severely criticized as being unfair to counsel and may work a substantial injustice to litigants as well as appellate courts. (Witkin, California Evidence, §§ 718-719, pp. 748-749.) In *Alocco* v. *Fouche*, 190 Cal.App.2d 244 [11 Cal.Rptr. 818], it was held that failure of the court to rule formally on evidence received subject to objection is without prejudice if the objections were untenable and the court finds in accordance with the evidence. We must therefore pursue the authorities which might support the judgment.

*Formerly Rules on Appeal, rule 17 (b).

It well appears that the evidence is not consistent with the pleadings in respect to the claimed defense. The defense states that there was a bona fide dispute between plaintiff and defendants in reference to the amount of money owed by defendants to plaintiff under the alleged promissory note and that plaintiff and defendants had an accounting and orally mutually agreed to, and did, rescind and cancel said note. No fraud is alleged. The evidence merely shows that there was a dispute over the claimed representation that Jay represented he would guarantee a gross income of $3,500 a week and a right to rescind the transaction for misrepresentation. The note was never cancelled and no demand was ever made by defendants for its return.

Civil Code, section 1541, provides: "An obligation is extinguished by a release therefrom given to the debtor by the creditor, upon a new consideration, or in writing, with or without new consideration."

*Grant* v. *Aerodraulics Co.,* 91 Cal.App.2d 68 [204 P.2d 683], is authority for the proposition that termination or abrogation of a written contract may be achieved by an oral agreement, but such agreement is subject to the rules concerning contracts in general and hence must be supported by a sufficient consideration. In *Pellissier* v. *Hunter,* 209 Cal.App.2d 306 [25 Cal.Rptr. 779] (hearing denied), this court considered the question of admissibility of a claimed oral agreement made contemporaneously with a written agreement, where its terms were not inconsistent with the terms of the written agreement and related to the same subject matter. There, it was held that for evidence of an oral agreement that is collateral to a written agreement to be admissible, the collateral agreement must have a separate consideration or it must be such as might naturally be made as a separate agreement by the parties so situated. In *Rottman* v. *Hevener, supra,* 54 Cal.App. 474, it was held that in the absence of fraud or mistake, the time of payment as fixed by the written terms of a promissory note cannot be varied by any contemporaneous oral agreement; that the rule that a writing which purports to be the complete contract of the parties is deemed in law to be the full repository of the agreement or contract, that the whole contract is expressed by it, and that evidence of oral stipulations is not admissible to incorporate other elements in it or to alter or enlarge its terms, is applicable to negotiable as well as to nonnegotiable instruments.

Here, it does not affirmatively appear that there was any consideration given for the claimed agreement to cancel the note, and it does not definitely show that such claimed agreement was such as might naturally be made as a separate agreement by the parties so situated. (3 Corbin on Contracts, § 584; Rest., Contracts, § 240, subd. 1; *Greathouse* v. *Daleno,* 57 Cal.App. 187 [206 P. 1019]; *Sivers* v. *Sivers,* 97 Cal. 518 [32 P. 571].) Furthermore, the alleged agreement to guarantee that defendant would realize $3,500 gross profits per week from the route or the note would not be due and payable is directly contrary to and inconsistent with the terms of the note. Accordingly, such evidence would not be admissible under the objection made, except insofar as it might bear on the question of cancellation of the note. (*Rottman* v. *Hevener, supra,* 54 Cal.App. 474.)

It does appear that no accounting was ever had between the parties as alleged by defendants. Jay's bookkeeper testified that she prepared an account of money owing to Jay, including the balance due on the promissory note, mailed it by registered mail, and it was returned to her, unclaimed. At the trial, the trial court inquired if this account was still in her possession and it was stated that it was uncertain. The trial judge asked for its production and it was agreed that if it was found it would be presented to him for his consideration before the decision was made. The case was submitted. There is no mention in the record whether it was produced, and, if so, whether the trial court examined it, or what it contained. The evidence would not support a finding that an accounting had been had or that the parties mutually agreed, for a consideration, that the note would be cancelled.

Judgment reversed.

Coughlin J., and Brown (G.), J., concurred.