[Civ. No. 8550. Third Dist. Aug. 2, 1955.]

PHILIP MOSES POCOCK, Appellant, v. JOE ANTHONY
DENIZ et al., Respondents.

Pease & Lally for Appellant.

Desmond, McLaughlin & Russell and McDougall & Fitz-
william for Respondents.

VAN DYKE, P. J.—Plaintiff-appellant brought action
against respondents to recover damages for injuries suffered
in a collision between a car driven by him and a car driven
by respondent Joe Anthony Deniz. Judgment went for de-
fendants and plaintiff appeals, asserting as grounds for the
reversal of the judgment alleged error committed by the trial
court in rejecting evidence, in denying a motion to reopen the
case after the close of evidence, and, after judgment, error in
denying plaintiff's motion for a new trial. The new trial
motion was based upon surprise, and newly discovered evi-
dence.

At the time in question appellant was driving a light Crosley sedan northerly on Highway 99W near the town of Dunnigan in Yolo County. Respondent Joe Anthony Deniz, hereinafter called "Deniz," was driving an automobile southerly on the same road. The accident happened at a point where an unimproved dirt road intersected the highway from the west. At that point the highway is a two-lane road with pavement flanked by oiled shoulders. The focal issue was as to which car crossed the center line and collided with the other. The evidence was sharply in conflict and no contention is made on appeal that the jury verdict was not substantially supported.

Stated as briefly as may be in order to afford a proper foundation for discussion of the alleged errors, the evidence was as follows: Appellant testified that he was alone in his car; that he intended to cross the western lane of the highway and enter the dirt road and go thence to a motor court which he managed and which bordered on the highway at its intersection with the dirt road; that when he arrived at the place of his intended turn he stopped in the easterly lane to allow the Deniz car to pass; that at that time he observed that a car driven by an employee of the respondent State of California had been nosed out from the intersecting road in the westerly half of the pavement; that he saw the Deniz car swerve to its left as though to avoid a collision with the state car; that it crossed the white center line and struck his car; that he was rendered unconscious for some time and when he recovered was standing in his car, his head and shoulders through the right-hand window, the car being on its left side; that a doctor gave him a shot by inserting a needle in one of his arms and also gave him a white pill to take; that thereafter an ambulance and another doctor arrived and he was taken to the hospital. The occupants of the Deniz car, Joe Anthony Deniz, driver, J. F. Deniz, his father, and Hazel Deniz, his wife, all testified that as their car approached the scene of the accident none of them saw the state car; that their car proceeded in its travel lane until appellant's car came well over into that lane and was struck. A traffic officer who arrived about 20 minutes after the accident testified that, from the physical evidence upon the highway left by the colliding cars, he fixed the place of collision as entirely within the west lane; that 6 feet west of the center line there was a gouge mark in the highway surface which he determined was made by an axle of the Deniz car when the collision

knocked the wheels from under the Deniz car, letting the body down on the frame and the axle onto the ground. From this and from other evidence, the officer gave it as his opinion that the impact had occurred in the Deniz travel lane. At the close of respondents' testimony a Mr. Denny took the stand and testified as a witness for respondents. He said he was driving northerly, back behind appellant's car; that his car was being driven by his daughter; that he and his wife were in the front seat with her; that they were following another automobile at a distance of about 100 feet which was following appellant; that he saw the red stop lights of that car go on; that he saw the Crosley sedan ahead of it; that he saw the Crosley angle across the highway in front of the oncoming Deniz car at an angle which he estimated at from 15 to 35 degrees; that the Crosley was across the white line on impact by about 6 feet. Denny's wife and daughter were not called by either side, although present in court. Counsel for the appellants asserted that they were completely surprised by the production of Denny as an eyewitness to the collision as his presence at the scene had been unknown to them, despite their investigation; that though they distrusted him as a truthful witness they had no way at the moment of directly rebutting his testimony that he was an eyewitness. The evidence was closed after a short rebuttal on other matters and counsel for the appellant proceeded to argue about an hour before court adjourned for the day. In the meantime they contacted and, when the court convened the next morning, they produced in court a witness whose testimony they asked the court to receive. Counsel for the respondents opposed the reopening of the evidence under those conditions. It was made to appear that if this witness could be heard he would testify that he had been driving a truck northerly on the highway; that ahead of him there had been the Crosley car and only one car intervening; thus controverting Denny's testimony that there was one car between himself and the Crosley; that he did not actually see the collision since he was engaged in lighting a cigarette, but he heard the crash and looked up to see the Crosley spinning. In further support of the motion to reopen, counsel made it appear to the court that a witness was present who could testify that Mr. Denny's daughter had told her that while they had seen a wreck on the road and had heard that Mr. Pocock was injured they did not stop, but passed by and as they passed by Mr. Pocock was being put on a litter. Obviously, since the Denny girl had not

testified, this witness could not be permitted to give the testimony it was stated she could give. As to why the truck driver had not been produced as a direct witness in support of appellant's case, counsel explained that, although they had briefly interviewed him to determine if he was an eyewitness, they had not then appreciated that, though not an eyewitness, his testimony might still be material in rebuttal of the testimony of other witnesses that might be produced at the trial for respondents; that during the time intervening between adjournment and the convening of the court on the following morning they had secured his presence at the trial. They asserted that they had had no knowledge of the presence of the Denny family at the scene of the collision. The motion to reopen was opposed upon various grounds, such as that plaintiff's counsel should have been prepared to rebut Denny's testimony or that of any witness who might have seen things differently than did the truck driver, that counsel had already argued for an hour and that this would be overemphasizing or, as they put it, "spotlighting" the truck driver's testimony if given, and that if he was permitted to testify they would be compelled to ask a further continuance in order that they might investigate further to determine whether or not his testimony, in turn, could be rebutted. The trial court, after a full argument, denied the motion to reopen and this is assigned as prejudicial error. Whether or not a motion to reopen should be granted is committed in all cases to the sound discretion of the trial court and it is seldom, indeed, that a record will justify a reversal of a judgment upon the ground that error was committed in denying a motion to reopen. Thus, in *Castro* v. *Singh*, 131 Cal.App. 106, 115 [21 P.2d 169], denial of a motion to reopen was upheld where the matter sought to be elicited would merely produce further conflict in the evidence; in *Crawford* v. *Senegram*, 7 Cal.App.2d 449, 450 [46 P.2d 173], a like ruling on appeal was made where the motion to reopen was sought in order to permit a witness to testify as to matter impeaching a preceding witness; and numerous cases have held that such a motion is properly denied, unless the court is satisfied that there is good excuse shown why the evidence sought to be introduced after reopening could not have been produced before the close of the evidence. (*Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal.2d 64, 72 [77 P.2d 1059].) We think this clearly a case where an appellate court ought not to substitute its judgment based on a record on appeal for that of the trial judge who presided at the trial,

and we say this notwithstanding the basic rule in all trials that cases ought to be fully tried and that there should be presented to the triers of fact all relevant testimony which can be produced before them.

Appellant moved for a new trial and in support thereof he urged the following: He asserted that the denial of the motion to reopen constituted an error for which the court ought to grant a new trial because the effect of that error had been to deny to appellant a full and fair trial. The same considerations which we stated as grounds for refusing to hold it was not error to deny the motion to reopen compels us to reject appellant's assertions of the same error on motion for a new trial. A more serious matter, however, is presented with respect to newly discovered evidence. It appears that after the trial, and before the making of the motion for a new trial, appellant's counsel had located Dr. LeRoi Kegebein who was the doctor that had given appellant first aid treatment. It further appeared that Doctor Kegebein, with his wife, had been driving a car, as they were prepared to testify, immediately behind the Crosley; that they were eyewitnesses to the entire occurrence and would testify that they saw the Deniz car leave the westerly lane and turn directly in front of the Crosley and that the collision was entirely in the Crosley lane. The materiality of this proposed testimony, notwithstanding the serious conflict which it would have presented to the testimony that the collision occurred in the west lane, cannot be minimized. But immediately the question arose as to why these witnesses had not been produced at the trial. The trial judge refused to grant the new trial on the ground of newly discovered evidence, stating in a memorandum opinion which is in the record, that he deemed the showing of diligence was insufficient. Once again, we are discussing a matter which in the first instance is committed to the judicial discretion of the judge who presided at the trial and we cannot reverse his ruling unless it is made to appear that he abused that discretion.

It appears that appellant and his counsel knew that a doctor had given first aid treatment to appellant and knew his name and the area in which he practiced. When appellant's deposition was taken the following occurred: Questions by counsel on behalf of respondents: "Q. You told me before that you were knocked unconscious; is that correct? A. [By appellant] That is right. Q. When you regained consciousness where were you? A. I was standing up in my car being

taken care of by a doctor from up north. . . . Q. And the doctor was treating you? A. Yes, sir. Q. Do you know what he was doing to you? A. He shot me in the shoulder and give me a white pill. Q. Do you know the doctor's name? A. No, I don't, but I believe the lady in there does. I don't know him at all. He has been in the restaurant. I never contacted him. Q. Did you tell me where he was from? A. He was from Redding. [Counsel for appellant, interjecting] Do you want the name? [Counsel for respondents] Yes, I would, please. [Counsel for appellant] The doctor is from Central Valley as best I know. I think his name is L*eroy* Kegeb*ind*.'' Counsel for appellant, in support of his motion for new trial, gave affidavits concerning the charge that due diligence had not been shown in locating Doctor Kegebein and his wife and producing them as eyewitnesses. From this it appears that counsel had gained the impression that some doctor had arrived at the scene of the accident shortly thereafter and had given emergency treatment to appellant; that appellant did not know the name of the doctor, but thought him to be from Central Valley, California; that counsel later learned the doctor's name, but there was no such doctor listed with a telephone in Central Valley; that counsel believed Doctor Kegebein was an arriving witness and had not seen the accident and believed, until Denny took the stand, that testimony from an arriving witness was not apparently necessary; that, therefore, no further steps were taken before or during trial to locate the Kegebeins; that posttrial investigation revealed the likelihood that the Kegebeins had seen the accident, whereupon counsel went to Central Valley and located them, learning then, for the first time, that they were, as counsel's affidavit puts it, ''actual independent, impartial and unimpeachable eyewitnesses to the actual collision'' and also to ''position of the State'' car and would completely verify plaintiff's testimony in every important detail. A trial judge presented with a situation such as this has to make a difficult decision. As we have said trials ought to be full and fair and although they must be held and concluded, nevertheless the misfortune of not being able at the time to present material testimony because of lack of knowledge of its existence urges the granting of a new trial whenever the omitted evidence would probably cause a different outcome. This statement in part illustrates the difficulty of a trial judge's decision. If he grants a new trial it may be that the other side, through lapse of time, would lose the personal appear-

ance and may even lose the testimony of witnesses most material for them. Without going further, it is enough to say that the trial judge must balance many considerations pro and con, must declare his decision on the side of justice as best he can ascertain it, and must do so with an abiding uncertainty as to whether or not he ought to have acted otherwise. As for an appellate court, it cannot truly take the position of the trial judge and look through his eyes. ■ Such a court is confined to the cold record and once again it is only for an abuse of judicial discretion appearing from the record that the order denying a new trial can be reversed. We have read the entire record of the trial and the entire record of the proceedings on motion for new trial and think an abuse of judicial discretion has not been shown.

Appellant presented as an expert witness the traffic engineer of the city of Sacramento, who it is not disputed has had wide experience in traffic matters, including determinations as to how, from residual physical evidence, automobile collisions have occurred. He was asked a hypothetical question, objections to which were sustained by the trial court, and this action is assigned as error. Having qualified to give opinion evidence, he was asked a lengthy hypothetical question which we think it unnecessary to quote in full. He was asked to assume recited facts. There was then stated to him the versions of the various witnesses who had testified as to the way in which the accident had occurred. Both the version contended for by the plaintiff and that contended for by the defendants was stated and the physical facts testified to were given the witness. The question concluded in this way: "and in view of these assumed facts, gives you one version of the point of impact here where plaintiff says it was, and one version of the point of impact is here, where the defendant says it was. Which of those two points of impact are the most probable?" To this the court sustained an objection that the witness was being asked to invade the province of the jury and to pass upon the credibility of the witnesses. The jury was excused and the issue argued. ■ The vice of the question is apparent. The witness was asked to assume one set of facts to be true, which counsel called the "Deniz version," and then to assume a second set of facts squarely in conflict with the first, which counsel termed the "plaintiff's version," and then to tell the jury which of the two versions was most likely the true version. This is one of the fundamental functions exclusively entrusted to the triers of fact. They must

determine the facts through the use of all the facilities open to them, including such intangibles as the interest, the apparent bias, the appearance and demeanor of witnesses; they must draw upon their own wide experience in the affairs of life, and from all that is said and by the witnesses revealed the triers of fact must ascertain the truth. Having ascertained the truth, they must draw their inferences therefrom and come to their conclusions. To permit an expert to answer a question such as was posed here would be to permit him to take over the task of the jury. The ruling of the trial court was proper.

For the reasons given, the judgment appealed from is affirmed.

Schottky, J., and Finley, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.