[Civ. No. 9054. Fourth Dist., Div. Two. Sept. 18, 1968.]

Estate of JOHN HORMAN, Deceased. VASILISA PAVLOVNA GUMEN MALENKO et al., Claimants and Appellants, v. STATE OF CALIFORNIA, Objector and Respondent.

---

*Assigned by the Chairman of the Judicial Council.

. Slaff, Mosk & Rudman and Edward Mosk for Claimants and Appellants.

Thomas C. Lynch, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Objector and Respondent.

KERRIGAN, J.—John Horman[1] died on December 25, 1961, in Orange County and left an estate in excess of $450,000. The public administrator was appointed administrator of the estate in January 1962. Three years later, in January 1965, the State of California filed a petition for decree determining interest in estate which stated: that the decedent left no surviving spouse, kindred nor heirs; that various persons claimed an interest in the estate, but their rights had not been judicially determined; that the state was entitled to distribution of the estate as escheated property. While it is apparent that the state initiated the heirship proceedings, a separate heirship petition, statements of claim, and statements of interest were filed by various persons who maintained that they were the heirs of the decedent. Consequently, the burden rested with the purported heirs to establish their relationship to the decedent, and in the interest of brevity, they will be referred to herein as "claimants" or "appellants," and the State of California will be designated by name or as "respondent."

Appellants are citizens of the U.S.S.R. and reside in various parts of the Soviet Union. In their petition and statements

[1] The decedent's surname is characterized in various ways throughout the record on appeal. The caption in the probate proceedings reads "In the Matter of the Estate of John P. Horman, aka John Paulo Horman, aka John P. Hormen, aka J. P. Hormon, aka J. P. Horman, aka J. P. Hormen, aka John Hormen, aka John Plue Hormen"; the spelling "Horman" will be utilized in the opinion.

they claimed the following: that decedent's true name was Yakov[2] Pavlovich Gumen; that he was born in Russia and emigrated to the United States when he was a young man; that he had one sister, Vasilisa, three full brothers, Matvey, Svirid and Andrei, and one half-brother, Andrei Lavrik; that decedent's sister Vasilisa survived the decedent; that decedent's full brothers and half-brother predeceased him; that the full brother, Andrei Gumen, died without issue; that claimants are the surviving sister of the decedent and the children of the full brothers, Matvey and Svirid, and the half-brother, Andrei Lavrik.

Following the filing of the foregoing petitions and statements of claim and interest, discovery ensued. The state propounded written interrogatories to the various persons claiming an interest in the estate, and answers thereto were eventually received and filed.

Eventually, in March 1967, a hearing was held. The state objected to the claimants' offer in evidence of answers to interrogatories and certain proffered exhibits. The court reserved its ruling on the objections and the cause was submitted for decision. On April 10 the court made a minute order which held "the heirship as alleged has not been proved and further that it is not proved that the decedent and Jacob Gumen are one and the same person as alleged. Therefore, it is ordered that the estate of the decedent escheat to the State of California. . . ." In the minute order the court further ruled that two documents offered by appellants were inadmissible, but failed to rule on the admissibility of six answers to interrogatories which had been offered in evidence by the claimants over the objection of the Attorney General and upon which the court had reserved its ruling at the time it took the cause under submission.

The claimants made a motion to reopen the case. In support of their motion, appellants attached declarations tending to support their position that the decedent and Jacob Gumen were one and the same person. Following a hearing on the motion, the same was denied on June 5.

Following the denial of the motion to reopen, claimants' counsel noticed the taking of depositions of certain persons residing in California. The claimants' counsel also made a motion for issuance of Letters Rogatory to depose the claimants in the U.S.S.R. Depositions were taken of the United

[2]Yakov is Russian for Jacob.

States citizens, but the Attorney General did not appear at the time the depositions were accomplished. The state objected to the issuance of Letters Rogatory, but the court ordered the issuance thereof so that the Russian claimants might be deposed. Written interrogatories were then propounded to the claimants and answers obtained.

In the interim, on July 3, 1967, findings of fact and conclusions of law and a decree determining interest in estate were signed by the court and thereafter entered on July 6. On August 7 the appellants gave notice of intention to move for new trial, and presented voluminous documents in the form of affidavits, declarations and depositions in support of the motion. The motion for new trial was argued on August 29 and denied in September 1967.

On October 25, following the issuance of the order denying claimants' motion for new trial and the initiation of the appeal, the court entered a *nunc pro tunc* order denying admission in evidence of six proposed exhibits—claimants' answers to the state's written interrogatories—which had been offered by claimants and to which the Attorney General had objected at the time of the hearing on the petition to determine heirship.

This appeal is from the judgment and from the order of the court denying the claimants' motion to reopen the cause and the order denying claimants' motion for a new trial. The order denying a new trial in a probate proceeding is nonappealable. (*Estate of Dopkins,* 34 Cal.2d 568, 569 [212 P.2d 886]; *Estate of Keeney,* 140 Cal.App.2d 688, 689 [295 P.2d 479, 297 P.2d 636]; *Estate of Smith,* 175 Cal.App.2d 803, 805 [1 Cal.Rptr. 46].) Similarly, an order denying a motion to reopen is likewise nonappealable inasmuch as the right of appeal is purely statutory and the appeal properly lies from the judgment. (See Code Civ. Proc., § 963.)

In maintaining that they are the sister, nieces and nephews of the decedent, appellants raise the following issues in their attack on the trial court's findings and decree: (1) The court erred in finding that they were not the heirs-at-law of the decedent inasmuch as the evidence conclusively established their relationship to the decedent; (2) the court committed the following errors of law: (a) in sustaining the objection to their offer in evidence of their answers to the interrogatories; (b) in withholding its ruling on objections and not ruling thereon until after the matter was submitted; (c) in entering

a *nunc pro tunc* order sustaining the objection to the interrogatories after notice of appeal had been filed; (d) in failing to make specific findings; (3) abusing its discretion by denying the motion to reopen for the purpose of taking further evidence; and (4) abusing its discretion by denying the motion for a new trial.

The evidence introduced in the trial forum at the time of the hearing of the heirship petitions, statements, and claims of interest reflects that Yakov Sviridovich Gumen [Jacob Pavlovich Gumen] was born in Russia; his parents were Pavel Sviridovich Gumen and Feodosia Vasilievna Moshna; four children were born as issue of the marriage; Matvey, born August 1880; Vasilisa, born 1886; Yakov [Jacob], the alleged decedent in this case; Andrei, born 1892; and Svirid (Spiridon], born 1889; there was also one son born to Jacob's mother by her first marriage, Andrei Lavrik; Jacob's sister, Vasilisa, is still living; the full brother, Andrei Gumen, died without issue; the other two full brothers and the half-brother died leaving issue.

Following the death of John Horman, a representative of the public administrator's office visited the home of the decedent, located in a fish market on Newport Avenue, Newport Beach, and found a packet of letters written in a foreign language, together with some miscellaneous envelopes and photographs. The public administrator presented the letters, envelopes and pictures to the attorney who was handling the estate. The attorney had the 28 letters translated from the Russian language to English. The letters had been written over a period of time spanning some 40 years. Inferentially, they had been preserved by the decedent during this protracted period. Significant excerpts from some of the correspondence follows in chronological order:

11-15-1917. "Letter is from your sister Vasilisa Pavlovna to her own and dear brother Jake Pavlovich . . .

"hello my dear Brother. I am sending you my humble greetings and lovingly bow before you and I wish you well in this world and greetings from my children . . . to their uncle . . . I am informing you my dear brother that I received your money on the 10 of November 20 roobles [*sic*] . . . I had memorial service and memorial table for our mother on the 14 of November . . .

"And so goodbye my Dear Brother. . . ."

Month of February, year of 1918. "This letter is from your sister Vasilisa Pavlovna to her dear brother Jacob Pavlovich. hello dear brother . . . greetings from my chil-

dren to their dear uncle . . . I am informing my dear brother than now our brothers Matvey and Svirid returned home . . .

"greetings from our brothers from Matvey and Svirid and from Andrey. We send you our most humble greetings . . . ."

Jan. 23, 1921. "This letter is from your sister Vasilisa Pavlovna. "hello my dear brother Jacob Pavlovich . . . Matvey has 2 pairs of bulls, 1 horse, 2 cows and a heifer . . . His children 2 girls. Svirid lives on the other side of the bridge . . . his family 4 girls and one boy.

"Dear brother why don't you write me if you have married or not . . . ."

April 4, 1922. "This letter is from your brother Svirid Pavlovich to his brother Jacob Pavlovich . . .

"all your nieces send their dear uncle greetings . . .

"Your brother Svirid Pavlovich."

The bulk of the correspondence found among the decedent's effects by the public administrator's representative were from Vasilisa. However, a few were written by Matvey to his "Dear Brother Jacob," as well as communications from Svirid [Spiridon] addressed to "Dear Brother Jacob Pavlovich." Some letters were presumably authored by Stepan Andreevich, son of Andrei Lavrik.

One of the most significant pieces of correspondence discovered among the decedent's effects is undated, but obviously was written by Vasilisa after January 23, 1959, inasmuch as it reads, in part, as follows:

"Hello my dear Brother Jacob Pavlovich.

"Greetings to you from your sister Vasilisa Pavlovna. Informing you my dear brother that my husband died 23 of January 1959. Now I am left alone there no one only my Granddaughter is with me . . . Our brother Matvey Pavlovich died 23 of August 1958 . . . I am sending you a photograph taken at the funeral of Ivan [Vasilisa's spouse] . . . Sending you a picture of the children of our brothers. they came to bury their uncle . . . ."

Many of the envelopes discovered with the letters were addressed to John P. Hormen, 2320 North Newport Boulevard, Newport Beach, California, U.S.A., and had their origin in Russia.

While the trial court had the benefit of birth, marriage and death certificates establishing that the descendants of Pavel Spiridonovich Gumen and Feodosia Vasilievna Lavrik Gumen

included Yakov Sviridovich Gumen and the claimants, together with letters greeting the recipient as ''Brother Jacob,'' from the purported sister Vasilisa, and the alleged brothers Matvey and Svirid, as well as letters of purported nieces, nephews and grandnieces, and while the envelopes which contained the letters had their origin in Russia, it cannot be said as a matter of law that the claimants definitely established that Yakov Sviridovich Gumen [Jacob Pavlovich] and John Horman were the same person. While the inference certainly arises that the decedent had treasured letters among his personal effects in which someone had written to Jacob Pavlovich in envelopes addressed to John P. Hormen, in which they identified themselves and others to be his kin, and regarded themselves as his relatives, it cannot be stated that the mere existence of the letters tended to prove by a preponderance of the evidence that John Horman and Jacob Gumen were one and the same person. Consequently, the trial court properly determined that the claimants had failed to establish their relationship to the decedent.

Obviously, claimants' counsel relied on the admissibility of the claimants' answers to the interrogatories for the purpose of establishing the validity of his clients' claims as heirs of the decedent, and for the purpose of proving that Jacob Gumen and John Horman were the same human being. At the trial, the claimants offered the amended answers to the state's interrogatories in evidence in the presentation of their case-in-chief. The state objected. The court took the offer of evidence and the objection under submission and eventually ruled the answers were inadmissible.

Section 2030 of the Code of Civil Procedure provides that a party may serve interrogatories upon an adverse party; that the adverse party must answer; that the answer may be used to the same extent as provided in subdivision (d) of section 2016 of the Code of Civil Procedure. The latter section provides:

''(d) At the trial . . . any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any one of the following provisions:

''. . . . . . . . . . . . . .

''(3) the deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (i) that the witness is unavailable as a witness within the meaning of section 240 of the Evidence Code or (ii) upon

application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard of the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.''

In the case under review, appellants maintain that their answers to the interrogatories were admissible under the foregoing statutes because they were absent from the hearing and were unable to attend, and that in the interest of justice, the answers should have been admitted into evidence.

The answers to the interrogatories are no more than affidavits of interested persons. By their very nature, such statements contain self-serving facts. In the absence of statutory permission, an affidavit is not competent evidence, although made under oath, because it is hearsay. (*Fewel* v. *Fewel,* 23 Cal.2d 431, 438 [144 P.2d 592]; *Lacrabere* v. *Wise,* 141 Cal. 554, 556 [75 P. 185].) Under discovery statutes almost identical to those existing in California, a party answering written interrogatories submitted by an adversary cannot secure the admission in evidence of his own answers to such interrogatories. (*Lobel* v. *American Airlines, Inc.* (2d Cir. 1951) 192 F.2d 217 [cert.den. 342 U.S. 945 [96 L.Ed. 703, 72 S.Ct. 558]]; *Haskell Plumbing & Heating Co.* v. *Weeks* (9th Cir. 1956) 16 Alaska 436 [237 F.2d 263]; *Grace & Co.* v. *City of Los Angeles* (9th Cir. 1960) 278 F.2d 771; *Callaway* v. *Perdue,* 238 Ark. 652 [385 S.W.2d 4, 13 A.L.R.2d 1300]; see also 13 A.L.R.3d pp. 1312-1328.) The principal reason for not allowing the use of interrogatories on behalf of the answering party is the fact that there is no opportunity for cross-examination. (*Callaway* v. *Perdue, supra,* p. 9; 4 Moore, Federal Practice, p. 2343 (2d ed.).) In addition, the practice, if countenanced, would greatly inhibit the use of discovery procedures, thereby thwarting the purpose of the Legislature. (See *Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355, 383 [15 Cal.Rptr. 90, 364 P.2d 266].) While the court properly ruled that the amended answers to the interrogatories were inadmissible, the record indicates that the case was argued by claimants' counsel on the assumption that the interrogatories would be admitted into evidence. The practice of deciding a case upon the basis of reserved rulings relating to the admissibility of evidence is a practice to be avoided inasmuch as in some cases it may work substantial injury to a litigant. (*Piercy* v. *De Fillipes,* 215 Cal.App.2d 284, 289 [30 Cal.Rptr. 62].) Where such a result occurs, the

error is considered to be of sufficient gravity to call for a reversal. (See *Stanwood* v. *Carson*, 169 Cal. 640, 644 [147 P. 562] ; *DeTray* v. *Higgins*, 31 Cal.App.2d 482, 487 [88 P.2d 241].) ██ In the present case the record reflects that petitioners suffered serious prejudice. The court did not rule on the admissibility of the amended answers to the interrogatories executed by Vasilisa until it handed down its decision of April 10. Furthermore, it did not sustain the objections to the amended answers executed by the six other claimants until October 25, which was after the judgment had been entered and the notice of appeal had been filed. Had the court ruled during the trial, the petitioners would have had an opportunity of seeking a continuance for purposes of securing the needed evidence. In heirship proceedings, it is not uncommon for the court to grant a continuance during the course of the trial to permit the filling of obvious gaps in the matter of family history. (See 2 Condee, Cal. Probate Practice (2d ed.) § 1526, p. 353.) In cases of intestacy, the identification of the heirs-at-law is frequently a difficult task. This is especially true in cases involving potential heirs residing in eastern Europe where conditions, at best, have been chaotic, and it is not easy to obtain satisfactory correspondence. (Condee, *supra*,[3] 1520, p. 340.) In view of the fact that the trial court ultimately determined that there was a failure of proof on the part of the applicants' case, the court's failure to rule constituted reversible error. Moreover, since the error was inherently judicial rather than clerical or inadvertent, the court could not correct its mistake by the simple expedient of a *nunc pro tunc* order. (See *Estate of Burnett*, 11 Cal.2d 259, 262 [79 P.2d 89] ; *Stevens* v. *Superior Court*, 7 Cal.2d 110, 112 [59 P.2d 988].)

██ It is also apparent that the trial court further abused its discretion in denying the claimants' motion to reopen the case for the purpose of taking further evidence, and in denying the claimants' motion for a new trial.

██ A trial court has the discretion to reopen the case for the introduction of additional evidence even after the making of a minute order directing entry of judgment. (*Litvinuk* v. *Litvinuk*, 27 Cal.2d 38, 43 [162 P.2d 8] ; *Gardner* v. *Rich Mfg. Co.*, 68 Cal.App.2d 725, 739 [158 P.2d 23].) ██ The grant-

---

[3]Judge Condee, in a Los Angeles Superior Court probate action to determine heirship, sent the Los Angeles Public Administrator and County Counsel to many different countries in Europe to take statements and depositions from potential heirs and witnesses at the expense of the estate in order to determine the heirship issue.

ing of a motion to reopen a case is committed to the trial court's discretion, and it is seldom that it will be held error to refuse to do so. (*Pocock* v. *Deniz*, 134 Cal.App.2d 758, 761 [286 P.2d 466].) ▮ However, a trial court may properly refuse to reopen a case for introduction of further testimony, or other additional evidence, where there has not been a sufficient showing of any excuse for not having produced the evidence at trial (*Stewart* v. *Cox*, 55 Cal.2d 857, 866 [13 Cal. Rptr. 521, 362 P.2d 345]), or where there is no showing of diligence. (*Fry* v. *Sheedy*, 143 Cal.App.2d 615, 623 [300 P.2d 242].) It is similarly clear that the trial court should exercise its discretion "in accordance with legal principles and in accordance with the ends of justice." (*Christina* v. *Daneri*, 22 Cal.App.2d 190, 193 [70 P.2d 983].) In *Estate of Fama*, 112 Cal.App.2d 309, 313 [245 P.2d 1101], in reversing a judgment in a will contest for failure of the trial court to reopen the case to permit further testimony on the material issue of the identity of the testatrix, the reviewing court ruled that the failure to reopen the case in order to permit justice to be done constituted an abuse of discretion. While it is difficult to define with precision the exact meaning of the phrase "abuse of judicial discretion" (*Clavey* v. *Lord*, 87 Cal. 413, 419 [25 P. 493]), it has been stated that "discretion is abused whenever . . . the court exceeds the bounds of reason, all of the circumstances before it being considered." (*State Farm etc. Ins. Co.* v. *Superior Court*, 47 Cal.2d 428, 432 [304 P.2d 13], quoting *Berry* v. *Chaplin*, 74 Cal.App.2d 669, 672 [169 P.2d 453].)

▮ In the case under review, claimants' counsel filed a declaration in support of the motion to reopen based on the following factors: there was evidence inadvertently omitted; claimants were taken by surprise by reason of certain objections to offers of evidence and other rulings relating to the admission of evidence at the trial; at the time of trial, he believed that he had sufficient admissible evidence to establish his case and that certain evidence [presumably the claimants' answers to the interrogatories] thought to be admissible was denied admission after the cause had been submitted for decision; evidence had been newly discovered since the court issued its minute order determining that the claimants were not heirs-at-law; the newly-acquired evidence established that John Horman and Jacob Gumen were one and the same person, and that he was Vasilisa's brother; such evidence con-

sisted of an alien registration form filed with the United States Immigration Bureau wherein Horman had stated that he was also known by the name of ''Gumen'' and that he was also known by the name of ''Jacob''; after the court entered its minute order of April 10, 1967, ruling that the estate escheat to the state, an investigator had been employed who discovered several persons who personally knew the decedent during his lifetime; these friends and acquaintances would testify to the following effect: that the decedent had personally informed them that Vasilisa was his sister; that he had other relatives in Russia; that during his lifetime, Horman had identified letters received from Vasilisa and her daughter Maria which were found in his effects after his demise; that he had also identified pictures found among his personal effects as depicting his relatives; that some of the envelopes found among his personal effects by the public administrator were returned, self-addressed envelopes sent by him to his relatives in Russia, and were in his own handwriting.

It is certainly conceivable that the claimants' investigator might reasonably have discovered the identity and whereabouts of the friends and acquaintances of the decedent prior to the heirship proceeding, and the issue of diligence necessarily arises. However, the lack of diligence in securing the presence of these witnesses at the hearing may well have been based on the assumption that the claimants' answers to the interrogatories would be admitted into evidence. In reserving its ruling on the objection to the admission of the answers to the interrogatories, the court foreclosed appellants' of any opportunity to continue the case for the purpose of seeking and presenting this additional evidence. The significance of the supplemental evidence is disclosed by the trial court's comment at the hearing on the motion to reopen, wherein it stated: ''Well, [counsel], I think you know very well that had you produced a shred of the evidence that you have brought into the court since the trial . . . the outcome might have been different. . . .''

A party is entitled to have received in evidence and considered by the court, before findings are made, all competent, relevant and material evidence on any material issue. (*R. J. Cardinal Co.* v. *Ritchie,* 218 Cal.App.2d 124, 146-147 [32 Cal.Rptr. 545]; *Foster* v. *Keating,* 120 Cal.App.2d 435, 451 [261 P.2d 529]; *Bole* v. *Bole,* 76 Cal.App.2d 344, 345-346

[172 P.2d 936].) While it is within the sound discretion of the trial court to define the issues and direct the order of proof, the court may not act so as to preclude a party from adducing competent, material and relevant evidence which tends to prove or disprove any material issues. (*Foster* v. *Keating, supra*; *Everts* v. *Matteson,* 21 Cal.2d 437, 450 [132 P.2d 476]; *Lawless* v. *Calaway,* 24 Cal.2d 81, 91 [147 P.2d 604]; *Pastene* v. *Pardini,* 135 Cal. 431, 432-433 [67 P. 681].)

 The trial court thus abused its discretion in not granting claimants' motion to reopen the cause for the purpose of presenting new evidence inasmuch as the additional evidence might well have, and probably would have, rendered a different result upon further hearing.

Finally, the trial court likewise abused its discretion in denying the motion for new trial. In support of this motion, the claimants offered the following evidence:

1. Deposition of Lydia Strother taken in July 1967, following the entry of judgment, the contents of which may be summarized in the following manner: she had known the decedent since 1938; he had told her he had a sister named Vasilisa and a niece named Maria living in Russia; he had received letters from his sister and niece; during his lifetime, Horman identified a photograph found by the public administrator portraying a ''wake'' as one taken at the death of his brother-in-law, Ivan, Vasilisa's husband; at Horman's request, she had frequently made out envelopes to send to his sister and niece in the Soviet Union; these envelopes were sent to the sister and his relatives in Russia to make it easy for them to mail letters back to him.

2. An alleged certificate issued by the District Director of Immigration and Naturalization Service in Los Angeles, dated June 23, 1967, indicating that the alien registration certificate filed by the decedent under the Alien Registration Act of 1940, wherein John Horman purportedly stated that he was known as ''Gumen,'' and that he also used the first name of ''Jacob.''[4]

3. The deposition of Valentina Blagoy taken in July-August 1967, contained the following evidentiary matter: she had known the decedent since 1925; she had conversed with him frequently; he had informed her his name in Russian had been Yakov Pavlovich Gumen; she had seen letters addressed to him from relatives, and the letters identified him by the

[4]The authenticity of this particular document is seriously disputed by the Attorney General, but it is unnecessary to determine its validity.

name of "Gumen"; she had seen letters written by Vasilisa and Maria; in 1957 and 1959 the decedent had given her the Russian addresses of his sister Vasilisa and his niece Maria and she had placed the addresses furnished her in her telephone book; the decedent had asked her to notify his relatives on his death; her husband had written a letter to Horman's relatives following his demise; she was familiar with the decedent's handwriting; she identified a letter written in the Russian language to Stepan Lavrik, in which Horman asked about his family, and which he signed as "Yakov Gumen."

4. George Blagoy gave the following testimony in his deposition: Horman told him he had brothers and a sister named Vasilisa in Russia; Horman told him his name was Gumen and his first name was Yakov; Horman had asked him and his wife to notify his sister Vasilisa and his niece Maria in the event of his death; he had written the requested letter following Horman's death.

5. Max Hurwitz, a practicing attorney in Newport Beach, was deposed as follows: he had known Horman since 1938; he had engaged in several conversations with Horman between 1956-1961; Horman informed him he wanted to make out a will leaving everything to his relatives in Russia, and that he was going to make out a list of those relatives and give it to him for preparation of a will.

6. Frances Bednarsky gave the following testimony in her deposition: she had known Horman since she was a little girl, commencing in the 1920's; her father and Horman were friends; both were of Russian ancestry; her father always referred to Horman as "Yakov"; she had visited Horman about a year before he died and he had shown her a letter he had received from his niece Maria, informing him she was coming to visit him in Newport Beach.

7. Blanche Kinney, in her declaration, averred that: she had known Horman since 1923; she had been employed by him during the last 15 years of his life; he had frequently told her he had relatives living in Russia; in the years immediately preceding his death, his main concern was for his sister Vasilisa and his niece Maria; he had received a letter from Maria shortly before his death wherein she indicated that she was going to come to visit him; Horman had asked Mrs. Kinney if she would allow Maria to stay at her house since his facilities were inadequate; she had agreed that Maria could remain with her while in the Newport Beach

area; she also recalled Horman showing her a photograph of a ''wake'' of the husband of his sister Vasilisa.

The granting or denying of a motion for a new trial, even as to newly discovered evidence, is largely in the discretion of the trial court, and its discretion will not be disturbed on appeal except upon a showing of a manifest abuse of discretion. (*Estate of Shepard,* 221 Cal.App.2d 70, 75 [34 Cal. Rptr 212]; *Strauch* v. *Bieloh,* 16 Cal.App.2d 278, 281 [60 P.2d 582].) Public policy requires the litigant to utilize every reasonable effort to present all existing evidence in his behalf. (*Akopiantz* v. *Board of Medical Examiners,* 190 Cal.App.2d 81, 93 [11 Cal.Rptr. 810].) Ordinarily, the moving party must establish that the newly discovered evidence could not, with reasonable diligence, have been discovered and produced at the trial (Code of Civ. Proc., § 657, subd. 4), and in the case before us it is entirely conceivable that the newly discovered evidence proffered as a ground for the granting of a new trial, which consists of the anticipated testimony of persons who resided in Los Angeles, Bellflower, Beverly Hills and Santa Ana, could have been discovered by a routine investigation. (See *Estate of Shepard, supra,* p. 76.) However, appellants were precluded from seeking a continuance to introduce this evidence by reason of the trial court's failure to rule on the admissibility of the answers to the interrogatories and, consequently, they cannot be deemed to have entered upon the trial at their peril. (Cf. *Scanlan* v. *San Francisco etc. Ry. Co.,* 128 Cal. 586, 589 [61 P. 271]; *Estate of Shepard, supra,* p. 80.)

The decree is reversed; purported appeals from orders dismissed.

McCabe, P. J., and Tamura, J., concurred.